[Civ. No. 23157.   Second Dist., Div. One.   June 11, 1959.]

THE PEOPLE ex rel. California Industries for the Blind, etc., Respondent, v. D & D PAD COMPANY (a Partnership) et al., Appellants.

Robert B. Heggen for Appellants.

Stanley Mosk, Attorney General, and Ariel C. Hilton, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal by D & D Pad Company, a copartnership, and G. Delbert Morris, and Dallas Richins, individually and as copartners doing business under the fictitious firm name of D & D Pad Company (hereinafter referred to as appellants), from a judgment for $15,209.54, rendered in favor of The People of the State of California for and on behalf of California Industries for the Blind, an agency of the Department of Education, which is an executive department of the State of California, on their complaint and against appellants on their counterclaim for $8,251.48 special damages and $38,000 general damages for alleged loss of net profits. Appellants gave notice that in lieu of both a reporter's and clerk's transcript, they would present their appeal wholly on a settled statement pursuant to rule 7(b), Rules on Appeal. Rule 7(b), as recently amended, reads: "If in lieu of both a reporter's and clerk's transcript, the appellant desires to present his appeal wholly on a settled statement, he shall serve and file a notice so stating within 10 days after filing the notice of appeal and, in that event, the provisions of rule 7(a) shall be applicable. The appellant's proposed statement shall contain *in addition to the condensed statement of the oral proceedings copies of the following*: (1) *The judgment roll or such portions thereof as are deemed material to a determination of the points on appeal,* and if there is no judgment roll, the judgment appealed from; (2) the notice of appeal; (3) the notice to the clerk of election to proceed by a settled statement; and (4) any notice of intention to move for a new trial or motion to vacate the judgment, the ruling thereon, if any, and a recital or résumé of any oral proceedings thereon. The appellant's proposed statement, and the respondent's proposed amendments, may include any other papers or records which either party might have had incorporated in the clerk's transcript, under the provisions of rule 5. Both the statement and the proposed amendments may be accompanied by a list of such exhibits admitted in evidence or rejected or affidavits as the party desires to have transmitted as originals." (Emphasis added.)

In addition to the engrossed narrative statement on appeal, the following documents are included in the record before us as the judgment roll: Complaint (to which is attached as Exhibit "A," a Production Agreement dated November 20, 1952, between State of California and Dallas Richins and G. Delbert Morris dba D & D Pad Co.); answer and counterclaim; fourth amendment of fourth defense to plaintiff's com-

plaint and counterclaim (to which the following documents are attached: Exhibit "B," memorandum dated October 24, 1953 to California Industries for the Blind from R. S. Oppenheim *re*: Furniture Pads, Exhibit "C," letter dated September 3, 1953, to Mr. Harry W. Stuart from George A. Brown) ; answer (to counterclaim) ; findings of fact and conclusions of law; judgment; notice of appeal; notice defendants will present appeal wholly on settled statement; stipulation (that the aforesaid papers are all of the papers, used or considered in the determination of the matter appealed from) ; judge's certificate (that transcript is a full, true and fair transcript).

In 1952 appellants Richins and Morris were insurance brokers with clients in the warehouse and moving business, which clients were in need of furniture pads of good quality and competitive price. At this time the California Industries for the Blind operated the Los Angeles Center on a budget of $100,000 per year with 150 blind employees and 35 sighted employees and engaged in the manufacture of various articles, some of which were sold as its own products and some of which were produced as contract work for various distributors. During World War II the Los Angeles Center had produced furniture pads on a single needle machine, but multiple-needle machines had made it impossible to compete.

The possibility that the Los Angeles Center might manufacture furniture pads for appellants to sell was discussed from early 1952 until a production agreement was signed by appellants and the Department of Education on November 23, 1952, which agreement was approved on December 15, 1952, by the Department of Finance.

The aforesaid production agreement required appellants to furnish certain machinery and equipment, including a multiple needle Fales machine, required to manufacture furniture pads and products, and with respect to payment, said production agreement contained the following provision:

"In consideration of the performance of this agreement the Contractor shall pay to the State during the term of this agreement, except during the 'Trial Period' if any is provided herein, for each completed unit of production the following amount: A sum computed by multiplying the number of hours of labor expended on each unit of production by the rate per hour fixed by the Manager of the Center, said hourly rates to be not less than 85¢ per hour and not more than $1.75 per hour, depending upon the skill of the workers as determined by the Manager of the Center, employed to mfg. such prod-

ucts; plus the piece rates on miscellaneous operations fixed by the mutual agreement of the parties, based on an hourly wage rate of 85¢ per hour; plus the actual cost of all materials used in each unit of production; plus an amount computed by multiplying the number of square ft. of space required in the mfg. of said products by 5¢ each month prorated by the number of units of production completed each month; plus 5% of the total cost of labor & materials used in each unit of production; plus 6% of cost of labor to cover vacation pay.''

In the complaint it is alleged that from on or about December 1, 1952, to on or about December 1, 1953, respondent expended and paid out for labor and materials pursuant to said written agreement the sum of $13,936.50; and that pursuant to an oral agreement entered into by and between the parties hereto on or about December 2, 1952, respondent supplied labor and materials at a cost of $2,082.62 for the design and construction of a feeder machine required in the operation of the Fales machine and that appellants agreed to pay the cost of said labor and materials, but that appellants had failed and refused to pay therefor.

The findings of fact were specific that the total cost for materials, material overhead, labor, labor overhead and space chargeable pursuant to the above-described contract to appellants was $14,097.27, but that respondent was limited by the prayer of its complaint to the recovery of $13,934.04 therefor; and that the total cost of equipment labor and equipment labor overhead expended on behalf of appellants pursuant to the above-described oral contract was $1,275.50. The findings of fact were specific that appellants expended the total sum of $8,251.48 for payments on sewing machines, travelling and living expenses, trucking and shipping expenses, engineering and equipment, office expenses, labor expenses and taxes in compliance with the said written contract. It was further found not to be true that respondent breached the said written contract, and it was found not to be true that appellants sustained damages in the amount of $8,251.48 or in any amount as a direct and proximate result of the alleged breach of said contract by respondent. It was further found not to be true that appellants sustained general damages in the sum of $38,000 as a direct and proximate result of any breach of contract by respondent.

In this appeal it is contended that ''the trial court erred in following the plaintiff's interpretation of the contract between the parties.'' Appellants contend, as would appear

to be obvious, that "the venture was highly unsuccessful." Appellants then argue "The immediate cause of failure was that the pads were in too poor quality, too late in filling orders, and cost too much to produce. The necessary ingredient for success that was lacking here was a person with supervisory duty, who had the know-how to combine labor, material, and equipment together, on time, at a fair cost of production, to produce furniture pads of workmanlike quality. . . . The plaintiff did not furnish *all* labor. It did not furnish a person with supervisory authority who knew how to put equipment, labor, and material together and make a good saleable furniture pad."

Civil Code, section 1638, provides: "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

The aforesaid production agreement contains the following provision: "The said work will be done in a good and workmanlike manner and the Contractor may *inspect the work at any stage* of manufacture and may reject same if it does not reasonably meet said specifications. . . . *The contractor may train the State employees* engaged in the work under this agreement *in any particular phase* of the work which the Production Center for the Blind and the Contractor deem desirable. Any such training shall be given in the Production Center for the Blind." (Emphasis added.)

The record before us does not indicate that any training program of any type was established by appellants as they were permitted to do under the terms of the aforesaid contract; nor does the record before us reveal that appellants even so much as suggested to anyone in authority at the Los Angeles Center that additional supervisory personnel be hired.

Appellants also argue "It is rudimentary that a seller of any product must know what his selling price is and reveal it to the prospective buyer. It is fundamental that any buyer will want to know exactly what a product will cost before he buys it. . . . Presumably the parties entered into the contract for profit, and not to help the CIB in its worthy projects without regard to what the loss to defendants would be. In other words the object was profit, not charity."

Civil Code, section 1636, provides: "A contract must be *interpreted* as to give effect to the *mutual intention of the parties as it existed at the time of contracting,* so far as the same is ascertainable and lawful." (Emphasis added.)

Civil Code, section 1639, provides: ''When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title.''

Civil Code, section 1640, provides: ''When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded.''

Appellants have not contended that the actual terminology of the contract was arrived at by reason of any fraud, mistake or accident. In essence they have contended that they were misled to their detriment by the erroneous estimates of the cost of labor and materials involved in the manufacture of the furniture pads. The contract specifically provides that appellants are to pay the actual cost of labor and materials incurred in the production of the furniture pads. The said production agreement makes no mention of the estimated costs, and there was no evidence that any guarantee was made that the estimated costs would reasonably approximate the actual costs of manufacture. Appellants could have protected themselves at the time of contracting by agreeing to purchase furniture pads manufactured as products of the Los Angeles Center at an established price rather than as contract work. Under the circumstances, it would be violative of the mutual intention of the parties as expressed in the aforesaid production agreement for us to create an ambiguity, and then to interpret the contract so as to assure a profit to appellants. This is particularly true in view of the following recital contained in the contract, ''WHEREAS, the execution of this agreement will provide increased employment for blind and physically handicapped individuals in the State of California:'', which recital would indicate that profit was not the sole object intended to be attained by entering into said contract.

■ Appellants next contend they ''have been misled to their detriment by plaintiff in important particulars,'' and that the elements of estoppel are present, relying upon Code of Civil Procedure, section 1962, subdivision 3, which provides as follows: ''Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it.'' It has been pointed out hereinabove that all parties recognized

that actual production costs were not available, and that under the terms of the production agreement appellants were required to furnish, adapt and maintain certain equipment. The record before us indicates that appellant Richins as well as representatives of respondent viewed the Fales machine prior to its purchase. The height of the machine was easily observable upon a visual inspection thereof, and there is nothing in the record to indicate that special knowledge was required to evaluate the height of the machine in relation to the ceiling of the Los Angeles Center. It would appear that the height of the machine was not considered by any of the parties until the machine was in process of being reassembled at the Los Angeles Center. Under the circumstances, the presumption set forth in Code of Civil Procedure, section 1962, subdivision 3, is inapplicable.

The necessary elements for promissory estoppel are succinctly set forth in Restatement of Contracts, section 90, to be: ''A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.''

In our opinion the specific language of the contract, as set forth hereinabove, is controlling under the circumstances of this case; and, accordingly, the necessary elements of estoppel are lacking.

There is sufficient evidence in the record to support the findings of fact, including the findings that respondent did not breach the contract, and that appellants, and each of them, breached the said written and the said oral contracts.

The judgment is affirmed.

White, P. J., and Lillie, J., concurred.